# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LINDA K. SEYMOUR and RICHARD A. CULBERTSON, et al.,**

**Plaintiffs,**

**v.** **Consolidated Case No: 6:16-cv-2147-Orl-41KRS**

**COMMISSIONER OF SOCIAL SECURITY and B. SMITHERMAN,**

**Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **OPPOSED MOTION TO DISMISS (Doc. No. 20)** |
| **FILED:** | **June 5, 2017** |

### I. BACKGROUND.

Plaintiffs Linda K. Seymour and her attorney, Richard A. Culbertson, Esq., filed this case on December 13, 2016 against Defendants Commissioner of Social Security ("Commissioner") and Beatrice Smitherman, an employee of the Social Security Administration ("SSA").[1] Doc. No. 1. The case was subsequently consolidated with three similar actions filed by Plaintiffs Olga Octelus,

[1] Although Plaintiffs include Smitherman as a defendant, the allegations in their consolidated complaint are directed solely to the Commissioner. For ease of reference, I refer only to the Commissioner throughout this Report and Recommendation.

Timothy Wayne Baker and Miguel Camacho, and this case became the lead case. Doc. No. 16. On May 15, 2017, Plaintiffs filed a consolidated complaint. Doc. No. 18.

Seymour, Octelus, Baker and Camacho (collectively, "Claimants") each had claims for Social Security Disability Insurance ("SSDI") benefits that were denied by the Commissioner. *Id.* ¶ 1. Each of the Claimants hired Culbertson to represent them in their administrative appeals before the SSA. *Id.* ¶ 2. Each Claimant entered into a fee agreement with Culbertson whereby they agreed to pay him a contingent fee equal to the lesser of $6,000.00 or twenty-five percent of any past-due benefits awarded as a result of his efforts. *Id.* ¶ 3. Danelle Campbell, a former employee of Culbertson, also signed the fees agreements, which provided that any attorney's fee was to be paid to Culbertson. *Id.* ¶ 9. Culbertson successfully represented all four Claimants, each of whom was determined to be disabled and entitled to retroactive and prospective SSDI benefits. *Id.* ¶¶ 4-5. In all four cases, an administrative law judge ("ALJ") entered an order approving the fee agreement between the Claimant and Culbertson. *Id.* ¶ 6. Each of those orders became final when neither the Claimant nor Culbertson filed an appeal. *Id.* ¶ 7.[2]

Plaintiffs contend, however, that the Commissioner has not complied with the approved fee agreements by refusing to pay Culbertson the full amount of the authorized attorney's fees in each case, instead awarding some or all of those fees to Campbell. *Id.* ¶¶ 8-12. After the SSA sent her checks for representing Octelus, Camacho and Baker, Campbell notified the Commissioner that she had been paid a salary when she worked for Culbertson, that she assigned her right to any fees to Culbertson, and that she is not entitled to fees in any of the Claimants' four cases. *Id.* ¶¶ 13-15;

[2] On February 17, 2017, the Acting Regional Chief ALJ reversed the previously approved fee agreement in Seymour's case because it did not meet certain statutory requirements. Perez Decl., Doc. No. 20-1, ¶¶ 32-33. As of May 27, 2017, the SSA had not released any fee payments from Seymour's past-due benefits. *Id.* ¶ 34.

Doc. No. 21-1 at 32-33. She has since refused to cash the checks she received from the SSA and pay those amounts to Culbertson. Doc. No. 18 ¶ 16.[3]

Culbertson's bank will not accept federal checks made payable to anyone other than him. His bank and other banks have informed him that they will not allow him to deposit federal checks issued to Campbell, even if she signs the checks over to him and authorizes their deposit. *Id.* ¶ 17. Plaintiffs thus allege that the only way Culbertson will receive the full amount of the authorized attorney's fees if the Commissioner re-issues to him the checks that were previously issued to Campbell. *Id.* ¶ 18.

Plaintiffs allege that they have made multiple efforts to resolve this matter at the administrative level, but SSA representatives have informed them that SSA policy requires payment of an equal share of the authorized attorney's fees to each attorney who represents a claimant, regardless of the terms of the approved fee agreement. *Id.* ¶ 19. Plaintiffs contend that by awarding an equal share of fees to Campbell instead of paying all of the fees to Culbertson, the Commissioner has wrongly deprived them of their past-due benefits by giving those benefits to someone who is not authorized to receive them. The Claimants allege that because they contractually agreed to pay Culbertson the full amount of attorney's fees authorized by the SSA, they still owe him the amounts that were paid to Campbell, and therefore may be subject to civil actions by Culbertson in state court. *Id.* ¶¶ 21-22. Plaintiffs also allege that the Commissioner's refusal to re-issue payment to Culbertson is an illegal interference with his income that is causing irreparable harm to his business, adversely affecting his ability to pay his employees and represent his clients.

[3] Indeed, as discussed below, it appears that Campbell has returned the checks to the SSA and requested that they be reissued to Culbertson. Doc. No. 21-1, at 32.

Plaintiffs bring this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the Commissioner's decision not to issue payment of the full amount of attorney's fees to Culbertson. Pursuant to the Mandamus Act, 28 U.S.C. § 1361, Plaintiffs also seek injunctive relief in the form of a writ of mandamus requiring the Commissioner to pay the entire amount of the authorized fees to Culbertson. Plaintiffs also make passing allegations of unconstitutional actions by the Commissioner. *Id.* ¶ 33. Plaintiffs allege that they have exhausted all administrative remedies available to them. *Id.* ¶ 34.

The Commissioner moves to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the Court lacks jurisdiction to review the Commissioner's actions under either 42 U.S.C. § 405(g) or the Mandamus Act. The motion is supported by evidence. Alternatively, the Commissioner moves to dismiss the complaint under Rule 12(b)(6). Doc. No. 20-1, 20-2, 20-3. In support of the response to the motion, Plaintiffs also submitted evidence. Doc. Nos. 21, 21-1, 21-2, 21-3. The motion was referred to the undersigned and is ripe for review.

## II. LEGAL STANDARD.

Attacks on subject matter jurisdiction under Rule 12(b)(1) are presented in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks on a complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980)). On the other hand, factual attacks "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* In a

factual attack, the court is free to weigh the evidence and evaluate the merits of the jurisdictional claims to determine if it has power to hear the case, and the presumption of truthfulness afforded a plaintiff's allegations does not attach. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citing *Lawrence*, 919 F.2d at 1529).

## III. DISCUSSION.

In her motion, the Commissioner asserts a factual challenge to this Court's jurisdiction over this action. The Commissioner does not dispute any of the factual allegations in Plaintiffs' complaint, but submits the Declaration of Laurel Perez, a Social Insurance Specialist with the SSA, who provides additional details about the manner in which the fee petitions were processed.[4] *See* Doc. No. 20-1. Along with their response to the Commissioner's motion, Plaintiffs submit the Declaration of Judith Smith, Culbertson's paralegal, as well as copies of Plaintiffs' fee agreements and the ALJ orders approving the same. *See* Doc. No. 21-1 Pursuant to Rule 12(b)(1), the Court may consider the exhibits attached to both parties' memoranda.

### *A. Background on the Payment of § 406(a) Attorney's Fees.*

Before addressing the merits of the motion to dismiss, it is helpful to describe the process by which the SSA pays attorney's fees to successful claimants at the administrative level.

The Social Security Act provides that an attorney who successfully represents a Social Security claimant at the administrative level and obtains past-due benefits for the claimant shall receive payment for his services. 42 U.S.C. § 406(a)(1). Such fees shall be paid out of the claimant's past-due benefits. *Id.* § 406(a)(4). The Commissioner must certify for payment the smallest of three possible amounts: (1) 25% of the total benefits awarded, (2) the fee agreed upon

[4] As discussed above, because the Commissioner makes a factual attack on subject-matter jurisdiction in this case, no presumptive truthfulness attaches to Plaintiffs' allegations and the Court is permitted to consider facts set forth by the Commissioner as well as the Plaintiffs.

between the attorney and the claimant, or (3) a reasonable fee to be fixed by the Commissioner. *Id.* § 406(a)(2)(a). The Act provides a process by which the claimant or his representative may seek administrative review of the "amount which would otherwise be the maximum fee as determined under [§ 406(a)(2)]." *Id.* § 406(a)(3). Once such review is undertaken, "[t]he decision of the administrative law judge or other person conducting the review shall not be subject to further review." *Id.* § 406(a)(3)(C).

Congress has granted the Commissioner "full power and authority to make rules and regulations and to establish procedures" for the payment of attorney's fees. 42 U.S.C. § 405(a). The regulations implemented by the Commissioner require a successful attorney to file a written fee request at the conclusion of the proceedings. 20 C.F.R. § 404.1725(a). The SSA reviews the fee request and determines the appropriate fee pursuant to a number of enumerated factors. *Id.* § 404.1725(b)(1). If the SSA concludes that a reasonable fee is appropriate, it provides written notice to counsel, stating the amount of the fee award and the basis for its decision. 20 C.F.R. § 404.1720(c).

The SSA provides a mechanism for direct payment of fees to eligible appointed representatives. To receive payment through the direct payment service, a representative must comply with certain administrative steps set forth in the SSA's internal operating guidelines known as the Program Operations Manual System ("POMS"). *See* https://secure.ssa.gov/apps10 (last visited September 13, 2017). To be eligible for direct payment, a representative must initially register with SSA by submitting a Form SSA-1699 (Registration for Appointed Representative Services and Direct Payment). POMS GN 03920.17B.3. A claimant appoints an attorney to represent her in the administrative proceedings by submitting a Form SSA-1696 (Appointment of Representative) or an equivalent writing. POMS GN 03910.040B. SSA does not recognize law

firms or entities as representatives; therefore, if a claimant submits an SSA-1696 appointing a law firm as her representative and an individual within the firm signs the notice accepting the appointment, the SSA will recognize that individual, not the law firm, as the claimant's representative. POMS GN 03910.040B.4.

Once a representative has been appointed, a claimant may revoke that appointment by doing so in writing at any time; alternatively, the representative may withdraw at any time by notifying both the claimant and the SSA in writing. POMS GN 03910.040C. The SSA explains that "[d]ocumenting a revocation of appointment or a representative's withdrawal from a case is [] important, to ensure that SSA does not incorrectly disclose information to a former representative, or incorrectly withhold benefits based on an appointment that is no longer in effect." POMS GN 03910.040A.

For each case in which a representative wishes to receive direct payment of the authorized fee, he or she must submit a Form SSA-1695 (Identifying Information for Possible Direct Payment of Authorized Fees). POMS GN 03920.017B.3. To receive payment for services performed on a claim, the representative must have submitted the required forms before the SSA reaches a favorable decision. *Id.*

When a claimant appoints multiple representatives (i.e., co-representatives), each representative must be registered with SSA and submit a separate SSA-1695, even if the co-representatives are members of the same firm. *Id.*; *see also* POMS GN 03910.040D. Where a claimant has appointed co-representatives, POMS provides that:

> SSA will authorize to each appointed representative *an equal share* of the total fee amount calculated under the terms of the approved fee agreement. Because SSA does not consider individual services in authorizing fees under the fee agreement process, SSA considers each representative entitled to an equal share of the total amount authorized for all the representation work in the case. *For example, if the*

> *claimant appointed two representatives from a firm, SSA would authorize to each half the total amount calculated under the terms of the fee agreement.*
>
> …
>
> When SSA has withheld title II and/or title XVI past-due benefits for a representative's fee, SSA will certify direct payment of the equal shares to the representatives in separate checks.

POMS GN 03940.009A (emphasis added).[5] If an appointed co-representative listed on the fee agreement is ineligible for direct payment of fees or otherwise has not complied with the procedures described above, SSA will still split the payment into equal shares, but will release that co-representative's portion of the authorized fees to the claimant, thus requiring the co-representative to recover his portion of the fee directly from the claimant. POMS GN 03940.009B; POMS GN 03920.050.

In their Declarations, Laurel Perez and Judith Phillips provide information about the manner in which each Claimant's fee petition was processed:

1. *Timothy Baker.*

In 2011, Baker appointed Lawrence M. Malman as his representative and the SSA received a fee agreement signed by Malman. On May 11, 2015, the SSA received a second form SSA-1696 appointing Culbertson and Campbell as Baker's representatives. On September 1, 2015, SSA received a fee agreement signed by Culbertson and Campbell. On September 12, 2015, SSA received and processed form SSA-1695s for both Culbertson and Campbell. On March 7, 2016, SSA received notice from Malman that he was withdrawing as representative for Baker and that he waived his rights to any attorney's fees. Doc. No. 20-1, ¶¶ 3-8.

Campbell's last day of employment at the Law Office of Richard A. Culbertson was January 15, 2016. On February 23, 2016, Baker signed a fee agreement with Culbertson and Sarah P. Fay,

[5] The SSA revised GN 03940.009 on August 23, 2017. The version in effect at all times relevant to this action is attached to the Commissioner's motion. Doc. No. 20-3, at 45-48.

Esq., an attorney working with Culbertson. On May 11, 2016, an ALJ entered a Notice of Decision-Fully Favorable, which included an order approving the fee agreement. Doc. No. 21-1 ¶¶ 3-4, 6.

On July 19, 2016, SSA authorized a total of $6,000.00 for § 406(a) attorney's fees and paid $6,000.00, minus a $91.00 administrative fee[6], to Campbell. The Commissioner acknowledges in her motion that the SSA improperly remitted payment only to Campbell and instead should have remitted payment to both Culbertson and Campbell. In light of that error, the check to Campbell was cancelled. SSA represents that it is taking the necessary steps to correct the mistake and remit an equal share of fees to both attorneys pursuant in accordance with POMS, GN 03920.050. Doc. No. 20-1 ¶¶ 9-11.

*2. Olga Octelus.*

On July 23, 2014, SSA received a form SSA-1696 appointing Culbertson as Octelus's appointed representative and a fee agreement signed by Culbertson. On August 17, 2015, SSA received another form SSA-1696 listing both Culbertson and Campbell as Octelus's representatives. On the same date, SSA received a fee agreement signed by Culbertson and Campbell. On March 30, 2016, SSA received a third form SSA-1696 listing only Culbertson as Octelus's representative and a fee agreement signed only by Culbertson. Doc. No. 20-1 ¶¶ 12-16.

Campbell's last day of employment at the Law Office of Richard A. Culbertson was January 15, 2016. On April 20, 2016, an ALJ entered a Notice of Decision-Fully Favorable, which included an order approving the fee agreement. Doc. No. 21-1 ¶¶ 14, 17.

SSA has no record of receiving a notice of withdrawal as representative from Campbell prior to the favorable decision, and therefore recognized both Culbertson and Campbell as co-representatives for fee purposes under POMS GN 03920.050A.2. On May 23, 2016, the ALJ

---

[6] The Social Security Act provides for a mandatory assessment on attorney's fees. 42. U.S.C. § 406(d).

approved attorney's fees in the amount of $6,000.00, minus a $45.50 administrative fee. On the same date, SSA mailed Culbertson a check for $2,954.45 and mailed Campbell a check for $2,954.50. Doc. No. 20-1 ¶¶ 17-20.

*3. Miguel Camacho.*

On October 9, 2000, SSA received a form SSA-1696 appointing Culbertson and Campbell as Camacho's representatives, a fee agreement signed by both Culbertson and Campbell, and SSA-1695s for both attorneys. Doc. No. 20-1 ¶¶ 21-22.

On December 22, 2015, Camacho signed another Fees for Service Agreement with Culbertson and Campbell. On March 1, 2016, and ALJ entered an order approving that fee agreement. Doc. No. 21-1 ¶¶ 9-10.

SSA has no record of receiving a notice of withdrawal from Campbell prior to the favorable decision, and it recognized both attorneys for fee purposes under POMS GN 03920.050 A.2. On March 14, 2016, SSA sent Culbertson and Campbell checks for $1,952.25, minus a user fee of $45.50, for a total of $1,906.75 each. On June 5, 2016, SSA sent Culbertson and Campbell a second payment of $1,047.74 each. Doc. No. 20-1 ¶¶ 23-26.

*4. Linda Seymour.*

On November 11, 2015, SSA received a form SSA-1696 appointing Culbertson and Campbell as Seymour's representatives. On June 28, 2016, the SSA received and processed SSA-1695s for both Culbertson and Campbell. On August 22, 2016, SSA received a form SSA-1696 appointing Culbertson and Fay as representatives. A few days later, SSA received a fee agreement signed by Culbertson and Fay. SSA received a second form SSA-1696 for Culbertson and Fay on September 21, 2016. Doc. No. 20-1 ¶¶ 27-31.

On December 8, 2016, an ALJ entered a Notice of Decision-Partially Favorable which included an order approving the August 22, 2016 fee agreement. Doc. No. 21-1 ¶ 20. On December 14, 2016, Beatrice Smitherman, a SSA employee, filed a protest to the Regional Chief ALJ stating that Seymour had appointed more than one representative from the same law firm, but the attorneys had not signed a single fee agreement as required by 42 U.S.C. § 406(a)(2)(A) and SSA's Hearing, Appeals, and Litigation Law Manual (HALLEX) § I-1-2-12(B)(1). On February 17, 2017, the Acting Regional Chief Judge reversed a previously approved fee agreement on that basis. As of May 27, 2017, SSA had not released any payments and was still awaiting a fee petition from Culbertson. SSA states that it has no record that Campbell has withdrawn as Seymour's representative, and it would therefore be required to recognize her for payment of attorney's fees under POMS GN 03920.050 A.2. Doc. No. 20-1 ¶¶ 32-35.

On July 26, 2016, Campbell wrote a letter to the SSA enclosing thirteen checks made payable to her for representing a number of claimants and requesting that they be reissued to Culbertson. Campbell also stated that she was withdrawing from all cases in which she signed a fee agreement with Culbertson between July 28, 2014 and January 15, 2016. Doc. No. 21-1 at 32-33.[7]

*B. Plaintiffs' Claims Are Not Subject to Judicial Review Pursuant to 42 U.S.C. § 405(g).*

Plaintiffs assert that "[j]urisdiction over the Defendant is conferred on this Court by 42 U.S.C. Section 405(g) which provides for a private right of action in the United States District Court where the Plaintiff resides after any final decision of the Commissioner of Social Security made

[7] In light of this letter, Perez's averment, dated June 5, 2017, that "[t]here is no statement in the electronic folder showing that Ms. Campbell withdrew" is perplexing. Doc. No. 20-1 ¶ 35. Campbell submitted the letter to the SSA, Office of Central Operations, stating, "I hereby withdraw from all cases in which I signed a fee agreement with Mr. Culbertson between July 28, 2014 and January 15, 2016." Doc. No. 21-1, at 32-33. This letter appears to be sufficient to accomplish Campbell's withdrawal as a representative of Claimants. Under POMS GN 03910.040 C, SSA was required to include a copy of this written notice of withdrawal in the claim file.

after a hearing to which he was a party." Doc. No. 18 ¶ 26. The Commissioner argues that sovereign immunity prevents this Court from reviewing Plaintiffs' claims under § 405(g).

Federal courts are courts of limited jurisdiction and permitted to adjudicate only those cases and controversies arising under the United States Constitution or those laws enacted by Congress pursuant to Article III of the United States Constitution. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Congress "may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had." *Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). The "United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (alteration in original) (internal quotation marks and citation omitted).

Judicial review of determinations under the Social Security Act is governed by 42 U.S.C. §§ 405(g) and (h). Section 405(g) states, in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). Judicial review therefore is limited "to a particular type of agency action, a '*final decision of the [Commissioner] made after a hearing*.'" *Califano v. Sanders*, 430 U.S. 99, 108 (1977) (emphasis added).

Section 405(g) is the exclusive source of federal court jurisdiction for Social Security cases by virtue of § 405(h), which provides that:

> The findings and decisions of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be

> reviewed by any person, tribunal, or governmental agency *except as herein provided*.

42 U.S.C. § 405(h) (emphasis added). Consequently, the Court may exercise jurisdiction over Plaintiffs' claims only if the SSA's award of § 406(a) attorney's fees to Culbertson and Campbell was a final decision made after a hearing.

The Social Security Act does not define the term "final decision," so "its meaning is left to the [Commissioner] to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). SSA regulations prescribe that, to obtain a "final decision," a claimant must first obtain an initial determination from the SSA and then complete additional steps of an administrative review process. 20 C.F.R. § 404.900(a)(1). The regulations explicitly state which administrative actions are not initial determinations and provide that a determination of the "fee that may be charged or received by a person who has represented" a claimant in a proceeding before the SSA is *not* an initial determination. 20 C.F.R. §404.903(f). Consequently, an award of attorney's fees under § 406(a) is not a final decision and cannot be reviewed by a district court. *Gottesman v. Mason*, No. 08-3884 (JLL), 2008 WL 4691904, at *4 (D.N.J. Oct. 22, 2008) ("Despite the finality of the fee decision post-appeal, it does not constitute a "final decision" for purposes of 42 U.S.C. § 405(g)."); *see also Palmer v. Barnhart*, 89 F. App'x 806, 809 (3d Cir. 2004); *Cordoba v. Massanari*, 256 F.3d 1044, 1047 (10th Cir. 2001).

Additionally, an award of attorney's fees pursuant to § 406(a) for representing a claimant at the administrative level is not a decision made "after a hearing." *See* 20 C.F.R. § 404.1720. "Attorneys have no right to an administrative hearing on the issue of the amount of fees to be awarded and such fees may be awarded without a hearing." *Byrd v. Harris*, 509 F. Supp. 2d 1222, 1225 (E.D. Tenn. 1981). Courts have thus held that they lack jurisdiction to review SSA fee

determinations on this basis.[8] *Pepe v. Schweiker*, 565 F. Supp. 97, 98 (E.D. Penn. 1983) (collecting cases).

Because the award of attorney's fees at the administrative level is not a "final decision" subject to judicial review, the Court lacks jurisdiction over this matter under 42 U.S.C. § 405(g).[9]

*C. Plaintiffs Have Not Stated a Colorable Due Process Claim.*

Although the Court is without jurisdiction to review the Commissioner's actions under § 405(g), the Supreme Court has held that § 405(g) does not preclude resolution of colorable constitutional claims raised in connection with a claim for benefits under the Social Security Act. *Califano*, 430 U.S. at 109. Plaintiffs argue that 42 U.S.C. §§ 406(a)(2)(A) and 406(a)(4) require the Commissioner to comply with the contractual fee agreements between Culbertson and the Claimants by paying him all the attorney's fees withheld from their past-due benefits. They allege that the Commissioner has taken their property without due process of law by awarding a portion of their past-due benefits to a person who was not entitled to receive them.

To establish a procedural due process claim, Plaintiffs must show that the Commissioner significantly interfered with a protectable liberty or property interest, and that the procedures attendant upon that deprivation were constitutionally insufficient. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). Whether a party has a protectable property interest for due process purposes is a question of law that the court may resolve on a motion to dismiss. *See Key*

[8] Courts have also held that attorneys are not considered "parties" to administrative proceedings for the purposes of § 405(g). *McCarthy v. Sec'y of Health & Human Servs.*, 793 F.2d 741, 743 (6th Cir. 1986); *Copaken v. Sec'y of Health, Ed. and Welfare*, 590 F.2d 729, 731 (8th Cir. 1979). Although the Claimants were parties to the administrative proceedings and are Plaintiffs in this case, Culbertson, as the prospective recipient of the fees, is the real party in interest. *See Watson v. Celebrezze*, 246 F. Supp. 764, 766 (E.D. Tenn. 1965) ("[J]urisdiction cannot be conferred merely by joining the claimant as a nominal party, when the attorney remains the only real party in interest.).

[9] *Counts v. Comm'r of Soc. Sec.*, No. 6:09-cv-2157-Orl-22KRS, 2010 US Dist. LEXIS 132724 (M.D. Fla. Dec. 15, 2010), relied on by Plaintiffs, is factually inapposite. In that case, the Court considered whether it had subject matter jurisdiction to review the Appeals Council's dismissal of a request for review of a final decision made after a hearing.

*W. Harbor Dev. Corp. v. City of Key W., Fl.*, No. 90-10027-CIV-KING, 1991 WL 496886, at *4 (S.D. Fla. Dec. 16, 1991). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Therefore, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Ely v. Mobile Hous. Bd.*, 605 F. App'x 846, 850 (11th Cir. 2015) (quoting *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)).

It is well-settled that the Commissioner has "broad discretion to determine what is a reasonable fee in any particular case." *Siler v. Heckler*, 583 F. Supp. 1110, 1112 (N.D. Ga. 1984) (citing *Copaken v. Sec'y of Health, Ed. and Welfare*, 590 F.2d 729, 731 (8th Cir. 1979)). However, even though the Commissioner has the sole authority to set the fee, that does not mean that she can set fees arbitrarily. *See Thomason v. Schweiker*, 692 F.2d 333, 336 (4th Cir. 1982). Therefore, "[e]ven when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations." *Florida, Dep't of Bus. Regulation v. United States Dep't of the Interior*, 768 F.2d 1248, 1257 n. 11 (11th Cir. 1985), *cert. denied* 475 U.S. 1011 (1986), abrogated on other grounds by *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. 209 (2012)..

Here, the SSA used the procedures set forth in POMS to determine which representatives were entitled to receive attorney's fees in each Claimant's case. Plaintiffs acknowledge that the POMS guidelines were applied, but they argue that the Commissioner should have directed SSA employees to ignore those guidelines and issue a single check in each case to Culbertson. They also argue that the POMS guidelines are at odds with the provisions of the Social Security Act and implementing regulations to the extent that they ignore the contractual provisions of a fee agreement

between a claimant and representative. To the extent Plaintiffs are asserting a *Chevron* challenge to POMS, such an argument is unpersuasive. The Eleventh Circuit has noted that although "POMS does not have the force of law, it can be persuasive," and evidence of the Commissioner's adherence to POMS is entitled to deference. *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003); *see also Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998) ("Because [POMS] guidelines represent the Commissioner's interpretation of the statutory mandate, they deserve substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute."); *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 151 (2d Cir. 2007) ("A POMS entry might arguably be evidence of the SSA's public construction of its authorizing statute or the Commissioner's own regulations, a construction that, if consistent with that statute, would be entitled to some level of deference.").

Based on the record, Campbell filed the necessary forms to become a representative in each Claimant's case and she did not withdraw as a representative at the time that she left Culbertson's law firm. Accordingly, she remained a co-representative in each case when the SSA awarded attorney's fees and the SSA's decisions to award equal shares of the attorney's fees to her and Culbertson were fully consistent with POMS GN 03920.050A.2 and 03940.009A.

Because the SSA complied with its own internal rules, Plaintiffs have failed to establish that the procedures used by the Commissioner were constitutionally deficient. Courts have uniformly rejected due process claims when the Commissioner has followed her own regulations for awarding and paying attorney's fees. *See Thomason*, 692 F.2d at 336 (holding that the procedure used by the SSA to determine attorney's fees complies with the requirements of due process); *Copaken*, 590 F.2d at 732 ("Congressional regulation of the amount of fees granted attorneys representing claimants for benefits created by an Act of Congress does not deprive an attorney of property of liberty in violation of the Fifth Amendment."); *Gottesman*, 2008 WL 4691904 at *6 (attorney who

failed to advise the SSA of an address change and therefore did not receive notice of a protest of her attorney's fee award nevertheless received due process by virtue of the fact that the SSA followed its own regulations in attempting to give her notice); *Siler* 583 F. Supp. at 1112-13 (rejecting attorney's due process challenge to the SSA's fee determination procedure).

Consequently, Plaintiffs have failed to state a cognizable due process claim.

*D. There is No Basis for the Court to Exercise Mandamus Jurisdiction.*

Plaintiffs also assert that the Court has jurisdiction over this action pursuant to the Mandamus Act, 28 U.S.C. § 1361. They seek a writ of mandamus requiring the Commissioner to reissue to Culbertson the checks that were made payable to Campbell.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (internal quotation marks and citation omitted). Mandamus jurisdiction is appropriate[10] only when "(1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy [is] available." *Id.* at 1258 (internal quotation marks and citation omitted). In determining whether jurisdiction exists under § 1361, "'allegations of the complaint, unless patently frivolous, are taken

[10] The Eleventh Circuit has assumed, without deciding, that mandamus jurisdiction is not barred by 42 U.S.C. § 405(h). *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 n. 3 (11th Cir. 2004). The Supreme Court has also repeatedly declined to decide whether mandamus jurisdiction is prohibited by § 405(h). *See, e.g.*, *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 n. 3 (1999). "However, the great weight of authority from other circuits has almost uniformly found that § 405(h) does not necessarily deprive district courts of mandamus jurisdiction." *In re Bayou Shores SNF, LLC*, 828 F.3d 1297, 1313–14 (11th Cir. 2016), *cert. denied sub nom. Bayou Shores SNF, LLC v. Florida Agency for Health Care Admin.*, 137 S. Ct. 2214, 198 L. Ed. 2d 658 (2017).

as true to avoid tackling the merits under the ruse of assessing jurisdiction.'" *Id.* (quoting *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)).

Mandamus jurisdiction is not warranted in this case. Plaintiffs allege that "[t]he Commissioner's agents and employees have a clear non-discretionary ministerial duty to pay the attorney fees due from Plaintiffs' past-due benefits to Mr. Culbertson." Doc. No. 18, ¶ 35(f). As discussed above, however, the Commissioner complied with published guidance for direct payment of attorney's fees when a claimant is represented by multiple representatives. She did not have a non-discretionary duty to award attorney's fees in a manner inconsistent with the POMS guidelines. "Where another branch of government is executing its functions and proceeding according to legally established practices, courts have been 'reluctant to afford discretionary relief.'" *Marcano v. Apfel*, 112 F. Supp. 2d 227, 230 (D. Puerto Rico 2000) (quoting *Nat'l Wildlife Federation v. United States*, 626 F.2d 917, 924 (D.D.C. 1980)); *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir. 1984) ("Mandamus is not available to review discretionary acts of agency officials.").

Additionally, Plaintiffs have failed to demonstrate that no other adequate remedy is available to them. Notably, they allege in their complaint that Culbertson could recover the unpaid portion of his fees by filing a state court action against the Claimants. Doc. No. 18 ¶ 22. They also allege that although Campbell disclaims any right to fees in their cases, she has refused to cash the checks she received and pay those amounts to Culbertson. Doc. No. 18 ¶¶ 13, 15, 16. Plaintiffs offer no explanation for Campbell's refusal to cash the checks and pay those fees to Culbertson.[11] Nevertheless, to the extent that Campbell refuses to pay him amounts the SSA tendered to her, Culbertson might have a state court remedy against her. Similarly, Claimants argue that the

[11] I note that the fees may be taxable income to Campbell if she cashed the checks. Accordingly, this is not a simple matter of Culbertson and Campbell's failure to cooperate, as argued by counsel for the Commissioner. Doc. No. 20, at 2.

Commissioner wrongfully deprived them of past-due benefits paid to Campbell. Under this argument, Claimants may have a state law cause of action against Campbell if she improperly retained part of Claimants' past-due benefits.

Additionally, it appears that Plaintiffs have some additional administrative remedies. Plaintiffs have "an unqualified right to request administrative review of the fee agreement approval or disapproval and/or of the amount of the fee." POMS GN-3940.001E.[12] Campbell has withdrawn from representation of Claimants.[13] The checks issued to Campbell have been returned to the SSA, and it appears that they may now be void because more than a year has expired since they were issued. *See, e.g.*, Doc. No. 21-1, at 13 (check issued on July 20, 2016 stating that it is "void after one year"). The Commissioner acknowledges that she has the power to cancel checks that were issued to Campbell, as she agreed to do with respect to the check issued to Campbell in Seymour's case. Therefore, upon a request for administrative review of the amount of fees payable to Culbertson, the Commissioner appears to have the ability to cancel the checks issued to Campbell and issue new checks to Culbertson as the sole remaining representative pursuant to the previously approved fee agreements. Alternatively, the Commissioner must return the unclaimed attorney's fees made payable to Campbell to the past-due benefits payable to Octelus, Baker and Camacho. *See* POMS GN 03920.050D.2.c (stating that as to former representatives who have withdrawn, the SSA will authorize these representatives the appropriate shares of the fee, "but release these shares

[12] Good cause for an untimely request for review exists in light of Campbell's withdrawal as Claimants' representatives and her return of the checks payable to her.

[13] If Campbell's letter is deemed insufficient to constitute her withdrawal as a representative of Claimants, Claimants may deliver to the Commissioner writings in which they revoke the appointment of Campbell as their representative. The Commissioner states that claimants may revoke the appointment of a representative in writing at any time.

of the withheld funds to the claimant"). Finally, it appears that Culbertson can file a fee petition in Seymour's case, as her sole representative, to obtain attorney's fees from her past-due benefits.

Plaintiffs make clear that they find some or all of these remedies undesirable, but their existence nonetheless precludes the issuance of a writ of mandamus. *See*, *e.g.*, *Scott v. Ross*, No. 3:16-0342, 2016 WL 865206, *3 (M.D. Penn. March 7, 2016); *Cartier v. Sec'y of State*, 506 F.2d 191, 199 (D.C. Cir.1974) ("[T]he alternative remedies that might call for refusal to resort to writ of mandamus encompass judicial remedies . . . as well as administrative ones.") (citations omitted).

## IV. RECOMMENDATIONS.

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Court find that this Court lacks jurisdiction over this action and therefore **GRANT** Defendant's Motion to Dismiss (Doc. No. 20). If the Court accepts this recommendation, I further **RECOMMEND** that, after issuing its order, the Court direct the Clerk of Court to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 22, 2017.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy